**FILED**
**Jun 06, 2019**
**01:18 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **LORI HILL,** | ) | **Docket No. 2018-07-0411** |
| **Employee,** | ) | |
| **v.** | ) | |
| **COX OIL COMPANY,** | ) | **State File No. 79342 2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACCIDENT FUND INSURANCE** | ) | **Judge Amber E. Luttrell** |
| **COMPANY OF AMERICA,** | ) | |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER

The Court held a Compensation Hearing on May 8, 2019, on Ms. Hill's request for workers' compensation benefits for alleged injuries to her right foot and left knee. The parties disputed whether Ms. Hill sustained permanent impairment for her compensable right-foot injury and whether she suffered a compensable left-knee injury. For the reasons below, the Court awards Ms. Hill permanent partial disability benefits and future medical benefits for her foot injury; the Court awards no permanent partial disability benefits, but does award limited medical benefits for the knee injury.

### History of Claim

Ms. Hill works for Maverick Convenience Store, which is owned by Cox Oil Company. On September 28, 2017, she worked in the deli, and a heavy container of chicken fell on her right foot. She reported the injury and sought treatment at the emergency room in Humboldt.[1] Cox Oil authorized treatment at Physicians Quality Care, who then referred her to Dr. Douglas Haltom, an orthopedic specialist. Ms. Hill later sought an independent medical evaluation with Dr. Samuel Chung. The parties took the depositions of Dr. Haltom and Dr. Chung and introduced the following medical proof.

---

[1] The parties did not introduce the hospital records into evidence.

1

Ms. Hill saw Dr. Haltom approximately five weeks after the injury for continued foot pain. Following a normal x-ray, he diagnosed a foot contusion with neuropathic pain. Dr. Haltom subsequently ordered an MRI, which revealed nondisplaced fractures at the third and fourth metatarsals. He recommended she continue using a walking boot and weight-bear as tolerated; he also prescribed crutches for use at home. After several months of conservative treatment, Dr. Haltom concluded Ms. Hill reached maximum medical improvement for her right-foot injury on January 9, 2018, and returned her to full duty. He testified she had minimal swelling, no tenderness to palpation, and x-rays indicated no bony abnormalities. Dr. Haltom assessed a zero-percent impairment rating for her foot injury under Table 16-2 on page 504 of the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides").[3] Dr. Haltom considered x-rays and Ms. Hill's most recent physical exam and functional history to assess her impairment.

During Ms. Hill's treatment for her foot injury, she reported the onset of left-knee pain. Dr. Haltom testified her symptoms were secondary to wearing the walking boot. He explained the boot had an uneven inch-and-a-half sole that can cause opposite-sided leg pain and irritation from an uneven gait. He diagnosed inflammation of the joint lining of the knee. Dr. Haltom provided conservative treatment for her complaints for two months and she reported some improvement. He later ordered an MRI, which revealed a radial tear to the medial meniscus and mild to moderate arthritis. Before her MRI, Dr. Haltom noted that Ms. Hill reported that "she slipped the other day at work and had increase in pain, but she has not had her MRI yet." Dr. Haltom did not address this incident further.

Regarding causation for the knee, Dr. Haltom testified within a reasonable degree of medical certainty that Ms. Hill's meniscus tear and arthritis were not primarily caused by her work injury. He stated Ms. Hill did not have an injury mechanism to sustain a traumatic radial tear of her meniscus. He believed the use of the walking boot had "some impact" but determined that it exacerbated an underlying problem.

On cross-examination, Dr. Haltom further explained the basis for his opinion that her meniscus tear was not a work injury. He stated the basis for his opinion was "her work injury mechanism and the fact that she had arthritic changes in her knee, and that the vast majority of meniscus tears are degenerative . . . [b]ut No. 1 would be her mechanism that was reported to me."

Regarding the impact of the walking boot, Dr. Haltom stated that "it could cause

---

[2] Dr. Haltom is a board-certified orthopedic surgeon.
[3] Both physicians testified they used the Sixth Edition of the AMA Guides.

an irritated and inflamed knee." Upon questioning regarding an aggravation or exacerbation caused by the boot, Dr. Haltom stated, "I could state the aggravation of her left knee, the complaints of left knee pain and swelling, would be primarily caused from the boot wear on the opposite extremity."

Cox Oil provided authorized treatment for Ms. Hill's left-knee complaints related to the boot until the MRI indicated a radial tear of the medial meniscus and Dr. Haltom recommended surgery to repair it. Cox Oil denied surgery based on Dr. Haltom's opinion that the tear did not primarily arise out of her injury; therefore, Ms. Hill underwent surgery under her personal health insurance.

*Dr. Chung*[4]

Ms. Hill saw Dr. Chung one time for an independent medical evaluation. Dr. Chung summarized Ms. Hill's history of her foot injury and later left-knee pain from wearing the walking boot and her treatment. He testified Ms. Hill also reported that, while undergoing conservative treatment for her left knee, she had an incident at work where she slipped on water on the kitchen floor and twisted her left knee, causing increased pain. Afterward, Ms. Hill had the MRI, and Dr. Haltom diagnosed the meniscal tear.

Dr. Chung reviewed the MRI report, and in addition to the tear, he noted it revealed osteoarthritis with mild to moderate articular cartilage loss. He also noted Ms. Hill underwent a left-knee arthroscopy with partial medial meniscectomy. Dr. Chung testified Ms. Hill reported continued left-knee pain with squatting, walking, or climbing stairs even after surgery. On exam of the right foot, Dr. Chung noted slight swelling and mild pain in the dorsum of the foot and pain in the bottom of the right mid-foot. Dr. Chung's left-knee exam indicated crepitus on flexion, which he stated sounded like arthritis causing friction. He noted minimal tenderness in the medial joint line and prepatellar area with palpation and some range of motion deficits. Dr. Chung obtained an x-ray of Ms. Hill's left knee and stated he measured two millimeters of cartilage interval between the medial patellofemoral joint line on the x-ray.

Regarding causation for the knee, Dr. Chung testified, "the left knee injury clearly was stemming from the subsequent weight-bearing on the left knee with wearing the walking boot but also the incident that took place . . . at her workplace where she slipped and then twisted her left knee." He further stated her injuries to her right-foot and left-knee were greater than fifty-percent caused by her work activities.

Dr. Chung concluded Ms. Hill retained permanent impairment for her right foot

---

[4] Dr. Chung is an osteopath with board certifications in physical medicine and rehabilitation and independent medical evaluations.

injury and left knee. For the right foot, he used Table 16-2 on page 504 of the AMA Guides and assessed a Class 1, Grade D, one-percent permanent impairment to the body for a healed nondisplaced fracture with abnormal exam findings. Dr. Chung based his impairment rating on his clinical findings and Ms. Hill's continued mild pain with weight-bearing and ambulation. For the left knee, Dr. Chung used Table 16-2 on page 511 and rated Ms. Hill for the diagnosis of patellofemoral arthritis with two millimeter cartilage interval. He assessed a Class 1, Grade C, four-percent permanent impairment to the body.

*Additional Testimony*

Ms. Hill testified she returned to work for Cox after Dr. Haltom released her. She currently works as a cashier and "works the floor," which consists of sweeping, mopping, and stocking coolers.

Ms. Hill continues to experience pain and swelling in her right foot if she stands for longer than two or three hours. She further stated she has stiffness in her left knee after sitting and knee pain while sleeping. She can no longer squat or sit on the floor to play with her grandchildren.[5]

**Findings of Fact and Conclusions of Law**

At a Compensation Hearing, the employee must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2018).

*Right foot*

The parties stipulated Ms. Hill's foot injury arose primarily out of and in the course and scope of her employment. Therefore, the Court holds Ms. Hill is entitled to reasonably necessary future medical treatment recommended by Dr. Haltom under Tennessee Code Annotated section 50-6-204. The issue the Court must address is whether Ms. Hill sustained any permanent impairment that entitles her to permanent partial disability benefits.

The Court considers the competing impairment opinions to analyze whether Ms. Hill successfully rebutted the statutory presumption afforded Dr. Haltom's zero-percent rating by a preponderance of the evidence. *See* Tenn. Code Ann. §50-6-204(k)(1). For the reasons below, the Court finds she did.

Both Drs. Haltom and Chung used Table 16-2 for metatarsal fractures to assess

---

[5] Ms. Hill further testified she underwent surgery for a *right* knee meniscus tear several months after the left knee. She maintained the left knee tear was related to her work injury.

Ms. Hill's impairment. However, they selected different classes for assigning impairment. Dr. Haltom assigned a zero-percent impairment under Class 0, which requires a healed fracture with no objective deficits. He based his opinion on his exam findings of a healed fracture, minimal swelling, and no tenderness on palpation.

In contrast, Dr. Chung assigned a one-percent impairment under Class 1, which requires a nondisplaced fracture with abnormal exam findings. He based his opinion on his findings of mild swelling and pain on palpation on the dorsum of the foot and the bottom of the mid-foot. He further based his impairment on Ms. Hill's continued mild pain with weight-bearing and ambulation.

Both physicians found swelling in Ms. Hill's foot on physical exam, eight months apart, which was consistent with Ms. Hill's credible testimony regarding her ongoing problems of swelling and pain in her foot. Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

The Court finds Dr. Chung's testimony regarding the foot impairment more thorough than Dr. Haltom's and, when combined with Ms. Hill's testimony, was more persuasive. Accordingly, the Court holds Dr. Chung's impairment opinion of one-percent to the body to be the accurate anatomic rating for the foot.

*Left knee*

Turning to the knee, Ms. Hill must show her alleged injury arose primarily out of and in the course and scope of her employment to establish a compensable injury. Further, she must show "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." The term "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *See* Tenn. Code Ann. §50-6-102(14). Moreover, a compensable injury does not include an aggravation "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). Thus, causation must be established by expert medical testimony.

Ms. Hill credibly testified regarding the details of her foot injury on September 28, 2017, and the resulting symptoms in her left knee while wearing the walking boot. Cox Oil offered no contrary evidence. Cox Oil authorized treatment for Ms. Hill with Dr. Haltom for the foot injury and knee complaints related to her wearing the boot. The issue is whether Ms. Hill established that the work injury primarily caused the meniscus tear,

5

the resulting surgery, and temporary disability.

In denying compensability for Ms. Hill's meniscus tear, Cox Oil relied on Dr. Haltom's opinion within a reasonable degree of medical certainty that the tear and arthritis found on the MRI did not arise primarily out of her work injury. As the authorized treating physician, Dr. Haltom's causation opinion is afforded a rebuttable statutory presumption of correctness.

To resolve this dispute, the Court considers Dr. Haltom's complete testimony regarding the basis for his causation opinion. He testified that Ms. Hill did not have an injury mechanism to sustain a traumatic radial tear of her meniscus. He explained that his opinion was based on "her work injury mechanism and the fact that she had arthritic changes in her knee, and that the vast majority of meniscus tears are degenerative . . . [b]ut No. 1 would be her mechanism that was reported to me."

Regarding the impact of the walking boot, Dr. Haltom acknowledged that wearing it could cause an "irritated and inflamed knee" and aggravated the knee by causing pain and swelling. The Court finds he treated Ms. Hill for those symptoms aggravated by her use of the boot; however, he never stated that Ms. Hill's use of the boot caused her meniscus tear or the need for surgery.

Considering Dr. Chung's causation testimony, the Court notes two troubling aspects of his opinion. He testified generally that "the knee injury" stemmed from *both* Ms. Hill's weight-bearing on her left knee while wearing the boot *and* a subsequent incident at work when she slipped on water in the kitchen and twisted her knee. The Court finds Dr. Chung's testimony insufficient to establish Ms. Hill's meniscus tear arose primarily out of her September 28, 2017 work injury. First, Dr. Chung did not specifically testify to causation for the meniscus tear. Instead, he generally referred to "the knee injury." Second, his opinion is insufficient because he attributed causation, in part, to the later incident at work where she slipped in water in the kitchen, which is not the injury at issue in this claim. Moreover, the Court notes that in determining permanent impairment for Ms. Hill's left knee, Dr. Chung did not rate Ms. Hill for her torn meniscus. Instead, he rated her based on patellofemoral arthritis.

"When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation." *Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Here, upon thorough consideration of the preponderance of the evidence, the Court finds Dr. Haltom's testimony more persuasive and holds Ms. Hill did not establish that her meniscus tear and resulting surgery arose primarily out of her employment.

However, the Court finds Ms. Hill did establish by a preponderance of the

6

evidence, through Dr. Haltom's testimony, an aggravation of her knee resulting in pain, irritation, and swelling, which primarily arose out of her wearing the boot; thus, she is entitled to future medical benefits for treatment for that aggravation. Because the Court finds Dr. Chung's causation opinion insufficient, the Court holds Ms. Hill is not entitled to an award of permanent disability because of any left-knee injury.

Finally, the Court holds Ms. Hill's attorney is entitled to a reasonable attorney's fee. The statute provides attorney's fees shall be deemed reasonable if the fee "does not exceed twenty percent (20%) of the award to the injury worker." Tenn. Code Ann. § 50-6-226. Thus, the Court holds Ms. Hill's counsel is entitled to a twenty-percent fee.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hill shall recover from Cox Oil Company 4.5 weeks of permanent partial disability benefits at the stipulated compensation rate of $195.54, for a total amount of $879.93 for her right-foot injury.

2. Ms. Hill shall receive future medical benefits for the right-foot injury.

3. Ms. Hill shall receive future medical benefits for the left knee made reasonably necessary by the aggravation of her knee from wearing the walking boot.

4. Ms. Hill's attorney is awarded a twenty-percent fee and any incurred expenses to be paid from Ms. Hill's award. If the parties are unable to reach an agreement regarding discretionary costs, Ms. Hill may file a post-trial motion.

5. Costs of $150.00 are assessed against Cox Oil Company under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2018), to be paid to the Clerk within five days of this order becoming final. Cox Oil Company shall prepare and file with the Clerk a statistical data form (SD2) within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

6. Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED June 6, 2019.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

# APPENDIX

Stipulated Findings of Fact:
1. Ms. Hill's date of injury was September 28, 2017.
2. She received authorized treatment from Dr. Haltom until he recommended knee surgery.
3. The parties stipulated that if the Court finds compensability for the left-knee injury, Ms. Hill is entitled to eight weeks of temporary total disability, which totals $1,564.32.
4. Ms. Hill returned to work for Cox Oil making the same or greater rate of pay.
5. Ms. Hill's compensation rate is $195.54.

Exhibits:
1. Dr. Chung's deposition
2. Dr. Chung's IME report
3. Dr. Haltom's deposition
4. Dr. Haltom's records
5. Physician's Quality Care records

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Order Granting Employer's Motion to Continue Mediation
6. Order Granting Motion to Amend Scheduling Order
7. Employee's List of Witnesses and Exhibits
8. Employer's Exhibit List
9. Employer's Witness List
10. Pre-Compensation Hearing Statement
11. Employer's Pre-Hearing Brief
12. Post-discovery Dispute Certification Notice

## CERTIFICATE OF SERVICE

I certify that a copy of the Compensation Hearing Order was sent to the following recipients as indicated below on June 6, 2019.

| Name | Email | Service sent to: |
|---|---|---|
| Edward L. Martindale, Jr., Employee's Counsel | X | edwardlmartindale@gmail.com rachalmwallace@gmail.com |
| Gordon Aulgur, Employer's Counsel | X | gordon.aulgur@accidentfund.com christine.spear@accidentfund.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month      Telephone       $ _____ per month

Electricity      $ _____ per month      School Supplies $ _____ per month

Water            $ _____ per month      Clothing        $ _____ per month

Gas              $ _____ per month      Child Care      $ _____ per month

Transportation   $ _____ per month      Child Support   $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____



## COMPENSATION HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice
Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

**Appellee(s)**
**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

**CERTIFICATE OF SERVICE**

I, _____ , certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____ , 20 ___ .

[Signature of appellant or attorney for appellant] _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf